# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

GERALD D. FIELDS,

                    Petitioner,             :     Case No. 2:21-cv-1877

    - vs -                           District Judge Sarah D. Morrison
                                        Magistrate Judge Michael R. Merz

JAY FORSHEY, Warden,
  Noble Correctional Institution,

                                  :
                    Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Gerald Fields under 28 U.S.C. § 2254, is before the Court for decision.  Relevant pleadings are the Petition (ECF No. 1), the State Court Record (ECF No. 9), the Return of Writ (ECF No. 10), and Petitioner's Traverse (ECF No. 15).

**Litigation History**

On February 20, 2019, a Muskingum County grand jury indicted Fields on one count of possession of cocaine in violation of Ohio Revised Code § 2925.11(A), one count of possession of marijuana (less than one hundred grams) in violation of Ohio Revised Code § 2925.11(A), one count of trafficking in cocaine in violation of Ohio Revised Code § 2925.03(A)(2); one count of trafficking in marijuana in violation of Ohio Revised Code § 2923.04(A), one count of illegal

manufacture of cocaine in violation of Ohio Revised Code § 2923.04(A), and one count of possession of drug paraphernalia in violation of Ohio Revised Code § 2925.14(C)(1)(Indictment, State Court Record, ECF No. 9, Ex. 1). A trial jury found Fields guilty as charged, but not on the property forfeiture specifications of the Indictment. The trial court then sentenced Fields to an aggregated ten years' imprisonment.

Represented by new counsel, Fields appealed to the Ohio Court of Appeals for the Fifth District which affirmed the conviction. *State v. Fields,* 2020 Ohio App. LEXIS 2883 (5th Dist. July 27, 2020), appellate jurisdiction declined, 160 Ohio St.3d 1507 (2020). Alleging ineffective assistance of appellate counsel, Fields filed an Application to Reopen his direct appeal on October 22, 2020 (State Court Record, ECF No. 9, Ex. 32) which the Fifth District denied. *Id.* at Ex. 34. The Supreme Court of Ohio declined to consider the further appeal. *Id.* at Ex. 38.

On December 18, 2019, Fields filed a petition for post-conviction relief under Ohio Revised Code § 2953.21. *Id.* at Ex. 19. The trial court rejected the Petition because it was not supported by any evidence outside the appellate record, the Fifth District affirmed on the same basis (*Id.* at Exs. 21 and 27) and Fields did not appeal to the Supreme Court of Ohio.

Fields filed his Petition in this Court on April 16, 2021, pleading the following grounds for relief:

> **Ground One:** Trial counsel was ineffective for failing to object to improper instruction on continued deliberations.
>
> **Ground Two:** Trial court allowed impermissible testimony.
>
> **Ground Three:** Jury verdicts are based on insufficient evidence.
>
> **Ground Four:** Fields was denied effective assistance of appellate counsel where a "dead-bang" winning argument was not briefed.
>
> **Ground Five:** Fields was denied choice of counsel where he proceeded with retained counsel, wasn't given opportunity to seek

> substitute counsel, didn't sign a waiver of counsel in open court, and wasn't appointed stand-by counsel when forced to proceed pro se.

(Petition, ECF No. 1 PageID 3-5).

# Analysis

### Ground One:  Ineffective Assistance of Trial Counsel: Failure to Object to Instruction

In his First Ground for Relief, Petitioner assert he received ineffective assistance of trial counsel when his trial attorney failed to object to the response the trial judge made to a question from the jury.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice*.  Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.   Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694.  See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. *Id*., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The

4

likelihood of a different result must be substantial, not just conceivable. *Id*., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

The facts regarding the jury's question as found by the Fifth District are:

P12 Approximately two hours into deliberations, the jury submitted a question inquiring as to what would happen if they could not come to a consensus on three of the counts, stating "this may be a while". (T. at 455). The trial court instructed the jury "You must continue your discussion and deliberations in an attempt to reach a verdict." *Id*. Neither party objected to the trial court's instruction.

P13 The following day, the jury found Appellant guilty as charged on all five (5) counts.

Fields presented his First Ground for Relief to the Fifth District as follows:

P17 Fields' trial counsel rendered ineffective assistance, in violation of the Sixth Amendment to the United States Constitution, by not objecting when the trial court provided an improper instruction on continued deliberations after the jury indicated that it could not reach a unanimous verdict.

The appellate court decided the Assignment of Error as follows:

P23 In his first assignment of error, Appellant argues he was denied the effective assistance of counsel. We disagree.

P24 To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. See, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id*. at 689, citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L. Ed. 83 (1955).

P25 "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at

689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id*. at 690.

P26 Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the Strickland test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A court may dispose of a case by considering the second prong first, if that would facilitate disposal of the case. *State v. Bradley*, 42 Ohio St. 3d 136, 143, 538 N.E.2d 373 (1989), citing *Strickland*, 466 U.S. at 697. We note that a properly licensed attorney is presumed competent. See *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 209 N.E.2d 164 (1965); *State v. Calhoun*, 86 Ohio St. 3d 279, 1999-Ohio-102, 714 N.E.2d 905 (1999).

P27 Further, reviewing courts must refrain from second-guessing strategic decisions and presume that counsel's performance falls within the wide range of reasonable legal assistance. *State v. Merry*, 5th Dist. Stark No. 2011CA00203, 2012-Ohio-2910, ¶ 42, citing *State v. Carter*, 72 Ohio St. 3d 545, 558, 1995-Ohio-104, 651 N.E.2d 965 (1995). Debatable trial tactics do not establish ineffective assistance of counsel. *State v. Wilson*, 2018-Ohio-396, ¶ 36, 106 N.E.3d 806 (5th Dist.), citing *State v. Hoffner*, 102 Ohio St. 3d 358, 365, 2004-Ohio-3430, ¶ 45, 811 N.E.2d 48 (2004).

P28 Appellant herein argues that defense trial counsel provided ineffective assistance in failing to object to the instruction provided to the jury to continue deliberations in an attempt to reach a verdict. Appellant argues that the trial court should have read the jury the *Howard* charge.

P29 In *State v. Howard,* 42 Ohio St. 3d 18, 537 N.E.2d 188 (1989), the Ohio Supreme Court approved a supplemental charge to be given to juries deadlocked on the question of conviction or acquittal. *Id*. at paragraph two of the syllabus. The charge must be balanced and neutral, and comport with the following goals: (1) encourage a unanimous verdict only when one can conscientiously be reached, leaving open the possibility of a hung jury and resulting mistrial; and (2) call for all jurors to reevaluate their opinions, not just the jurors in the minority. *Id*. at 25.

P30 A trial court is not required to give a verbatim Howard charge, as long as the given charge did not coerce the jurors into reaching a

verdict. *In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St. 3d 313, 2006-Ohio-2109, 847 N.E.2d 1174 (2006).

P31 "Where it appears to a trial court that a jury is incapable of reaching a consensus, the court, in its discretion, may make a last-ditch effort to prod the jury into reaching a unanimous verdict so long as its instructions are balanced, neutral, and not coercive." *State v. King*, 8th Dist. Cuyahoga No. 99319, 2013-Ohio-4791, ¶ 24, 2013 WL 5886605 (2013), citing *Howard* at 24, 537 N.E.2d 188. "[T]he determination of whether a jury is irreconcilably deadlocked is within the discretion of the trial court." *Id.* at ¶ 25, citing *State v. Gapen*, 104 Ohio St. 3d 358, 2004-Ohio-6548, ¶ 127, 819 N.E.2d 1047 (2004). Moreover, "there is no bright-line test to determine what constitutes an irreconcilably deadlocked jury." *King* at ¶ 26. "There is no formula or required period of time a trial court must wait before issuing a Howard instruction." (Citations omitted.) Id. See also *State v. May*, 2015-Ohio-4275, ¶ 55, 49 N.E.3d 736 (8th Dist.) (where this court found that the trial court did not abuse its discretion or did not commit plain error "in giving a supplemental Howard instruction at 4:30 p.m. rather than the following morning"). See also *Jones v. Cleveland Clinic Found.*, 8th Dist. No. 107030, 2019-Ohio-347, ¶¶ 37-38, 119 N.E.3d 490.

P32 In the instant case, the jury had only been deliberating for two hours when they sent their question to the trial court. Further, the jury did not inform the trial court that they were deadlocked, only that their deliberations may take a while. The instruction provided to the jury did not stress or coerce them into reaching a verdict, it stated only that they must continue their "discussion and deliberations in an attempt to reach a verdict." We do not find the trial court abused its discretion in giving the instruction it did and not giving a Howard charge at that time.

P33 Having found no error in the trial court's instructions, we find no ineffective assistance of Appellant's trial counsel for failure to object to same.

P34 Appellant's first assignment of error is overruled.

In his Petition, Fields asserts that the deficiency in his attorney's performance has been previously recognized in *State v. Howard*, 42 Ohio St.3d 18 (1989). In that case the Supreme Court of Ohio approved a supplemental instruction to be given to a deadlocked jury which

substituted for the traditional *Allen* or "dynamite" charge approved by the United States Supreme Court for use in federal criminal trials in *Allen v. United States*, 164 U.S. 492 (1896). In *Howard* the Ohio court also found it was ineffective assistance of trial counsel not to object to the *Allen* charge.

Because the Ohio Supreme Court firmly repudiated the *Allen* charge in *Howard*, it would have been ineffective assistance of trial counsel for Fields' trial attorney to fail to object **if** the *Allen* charge had been given in this case. But that is not what happened here. The Fifth District held that, given the circumstances of the jury's question, the *Howard* charge was not called for and it was not error for the trial court to respond to the question as it did. Because the response given was not error as a matter of state law, the Fifth District held it was not ineffective assistance of trial counsel to fail to object.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Here the Fifth District was squarely presented with the ineffective assistance of trial counsel constitutional claim and decided it as presented. To prevail, Fields must show that the Fifth District's decision is an unreasonable application of *Strickland*.

Instead of making that argument, Petitioner claims in his reply that his First Ground for Relief is actually a jury unanimity claim instead of an ineffective assistance of trial counsel claim (Reply, ECF No. 15, PageID 836, relying on *Ramos v. Louisiana*, 590 U. S. ___, 140 S. Ct. 1390,

206 L. Ed. 2d 583 (2020)).    In *Ramos* the Supreme Court held that Louisiana's practice of allowing a less-than-unanimous verdict in a criminal case violated the United States Constitution. *Ramos* has no applicability here because Ohio has always required a unanimous verdict in criminal cases and nothing about the trial judge's response to the jury's question suggests anything else. Moreover, no jury unanimity question was presented to the Fifth District or here in the Petition. A claim may not be added or substantially amended in a traverse. *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011.  Finally as Fields acknowledges in his Traverse, *Ramos* is not applicable retroactively to cases on collateral review.  *Edwards v. Vannoy*, 593 U.S. ___, 141 S. Ct. 1547 (2021).

Fields' First Ground for Relief is without merit and should be denied.


**Ground Two:  Trial Court Allowance of Impermissible Testimony**


In his Second Ground for Relief, Fields claims the trial court committed prejudicial error in admitting "other acts" testimony under Ohio R. Evid. 404(b).

Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).   "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

Fields' Second Ground for Relief is not cognizable in federal habeas corpus because the United States Supreme Court has never held that the admission of "other acts" testimony violates the Constitution.  "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*. 502 U.S. 62 (1991).  Although Petitioner framed his Second Assignment of Error on appeal as a constitutional question, he cited no federal law in his brief arguing this Assignment (Appellant's Brief, State Court Record, ECF No. 9, Ex. 12, PageID 70-72).

Ground Two should therefore be dismissed for failure to state a claim upon which federal habeas corpus relief can be granted.


**Ground Three:  Verdicts Supported by Insufficient Evidence**


In his Third Ground for Relief, Fields asserts he was convicted on insufficient evidence.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the

> responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given first to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v.*

11

*Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

Fields raised this insufficient evidence claim as his Fourth Assignment of Error on direct appeal and the Fifth District decided it as follows, along with his manifest weight of the evidence assignment:

P50 In his fourth and fifth assignments of error, Appellant argues his convictions were against the manifest weight and sufficiency of the evidence. We disagree.

P51 The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492 (1991), in which the Ohio Supreme Court held, "an appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

P52 In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lots its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, 78 Ohio St. 3d 380, 1997-Ohio-52, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id*, at 387

P53 It is well-established, though, that the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St. 3d 227, 2002-Ohio-2126, 767

N.E.2d 216. The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. *Id.*

P54 Appellant herein argues that the state failed to produce any witnesses to verify that they bought drugs from Fields or that they saw Fields possess or manufacture drugs." (Appellant's brief at 10). P55 In the present case, Appellant was convicted of two counts of Possession of Drugs (Cocaine and Marijuana), in violation of R.C. §2925.11(A), two counts of Trafficking in Drugs (Cocaine and Marijuana), in violation of R.C. §2925.03(A)(2) and one count of the Illegal Manufacture of Drugs (Cocaine), in violation of R.C. §2925.04(A), which provide, in relevant part:

P56 R.C. §2925.11
(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

P57 R.C. §2925.03
(A) No person shall knowingly do any of the following:
****
(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

P58 R.C. §2925.04
(A) No person shall knowingly cultivate marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance.

P59 At trial, the State introduced evidence to establish all [*17] of the elements of the possession, trafficking and manufacturing statutes recited above.

P60 At trial, the State introduced unrefuted evidence from the police officers that they received complaints regarding high numbers of people coming and going and drug trafficking from Appellant's residence. Detectives with the CODE task force investigated and observed the foot traffic at the house. Det. Wilhite testified this type of foot traffic is consistent with trafficking in drugs.

P61 Upon entering Appellant's home, the officers saw drugs and drug paraphernalia in plain sight. The State presented photographs

of marijuana mixed with cocaine, digital scales with cocaine residue on them, a bag containing cocaine located on the side of the bed, baking soda on the carpet beside the bed, sandwich baggies with the corners torn off found in the bedroom, Appellant's prescription bottles and men's watches on the night stand next to the bed, cocaine and baggies in a hot cocoa container, and marijuana roaches in a cashew container in the kitchen.

P62 The jury also heard testimony from Detective Wilhite who explained that baking soda is used as a cutting agent in the manufacturing of cocaine. He also testified that sandwich baggies are used in the packaging of drugs and that same were found under Appellant's bed. He further testified that $7,700.00 was found in a pillow case on Appellant's bed and three (3) bags containing marijuana were found in his dresser. The baggies were balled up in the corner and tied in a knot, which he explained is indicative of drug trafficking. (T. at 216).

P63 Additionally, the jury was shown Appellant's pay/owe ledger, which Det. Wilhite explained is associated with drug trafficking and is used to keep track of who owes money when the drug dealer fronts the drugs to someone for a period of time. (T. at 217, 257).

P64 Det. Wilhite testified that Appellant admitted that he smoked marijuana and that he also snorted powder cocaine. (T. at 383-384). Appellant also admitted to them that the crack cocaine they located belonged to him. *Id.*

P65 While the defense presented testimony and evidence that the marijuana, marijuana pipe, and the money belonged to Appellant Misty Roe and the cocaine and scales belonged to Tara Harris, the jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP—739, 2000 Ohio App. LEXIS 1138, 1999 WL 29752 (Mar 23, 2000) citing *State v. Nivens,* 10th Dist. Franklin No. 95APA09-1236, 1996 Ohio App. LEXIS 2245, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP—604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP—1238, 2003-Ohio-2889, citing *State v. Caldwell,* 79 Ohio App. .3d 667, 607 N.E.2d 1096

14

(4th Dist. 1992). Although some of the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks,* 61 Ohio St. 3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, superseded by State constitutional amendment on other grounds as stated in *State v. Smith,* 80 Ohio St. 3d 89, 102, 1997-Ohio-355, 684 N.E.2d 668 at n.4, 80 Ohio St. 3d 89, 1997- Ohio 355, 684 N.E.2d 668 (1997).

P66 Based on the foregoing, we find that this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins*, 78 Ohio St. 3d 380, 386-387, 1997-Ohio-52, 678 N.E.2d 541 (1997), quoting *Martin*, 20 Ohio App. 3d 172, at 175, 485 N.E.2d 717, 20 Ohio B. 215. Based upon the foregoing and the entire record in this matter we find Appellant's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Appellant's guilt. The jury neither lost their way nor created a miscarriage of justice in convicting Appellant of the offenses.

P67 Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Appellant was convicted.

P68 Appellant's fourth and fifth assignments of error are overruled.

*State v. Fields, supra.*

Because the Fifth District decided on the merits Fields' constitutional claim that his conviction is supported by insufficient evidence, to prevail in habeas corpus he must show that decision was an objectively unreasonable application of *Jackson*. Fields' claim in his Petition is essentially that the State produced no **direct** evidence of drug sales or manufacturing (Petition, ECF No. 1, PageID 3). Indeed, the State's case was circumstantial, but, as noted above, a circumstantial case can be sufficient. *Stewart v. Wolfenbarger, supra.*

"Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on

circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction. Therefore, where the jury is properly and adequately instructed as to the standards for reasonable doubt a special instruction as to circumstantial evidence is not required." (*Holland v. United States*, 348 U.S. 121(1954) followed; *State v. Kulig*, 37 Ohio St. 2d 157 (1974), overruled on other grounds by *State v. Jenks*, 61 Ohio St. 3d 259 (1991).)

"Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *United States v. Ramirez*, 635 F.3d 249, 256 (6th Cir. 2011), quoting *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1993); *United States v. Wettstain,* 618 F.3d 577, 583 (6th Cir. 2010); *United States v. McAuliffe,* 490 F.3d 526, 537 (6th Cir. 2007); *United States v. Kelley,* 461 F.3d 817, 825 (6th Cir. 2006); *United States v. Reed,* 167 F.3d 984, 992 (6th Cir. 1999); *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir. 1992).

"[D]irect evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330 (1960)(Brennan), citing *Rogers* v. *Missouri Pacific R. Co*., 352 U.S. 500, 508, n. 17(1957). The State presented a good deal of circumstantial evidence of drug involvement by the people present when the search occurred. Was it all Fields' doing? Was it consistent with simple drug use as opposed to trafficking? Fields presented evidence which combatted the inferences the State wanted the jury to make. But it cannot be said the circumstantial evidence was consistent only with Fields' innocence. The question of credibility was properly left to the jury. The jury decided that Fields was guilty and, given what the evidence was, we are required to defer to them.

Fields' Third Ground for Relief should be dismissed on the merits.

## Ground Four:  Ineffective Assistance of Appellate Counsel

In his Fourth Ground for Relief, Fields claims he received ineffective assistance of appellate counsel when his appellate attorney failed to brief a "dead-bang" winner of an assignment of error.  Fields does not say in his Petition what that assignment would have been.  All that he says in the Traverse is "The strength of ineffective assistance of appellate counsel is based upon whether Claim Five is contrary to, or involves an unreasonable application of, clearly established Federal law" (ECF No. 15, PageID 838).

## Ground Five:  Denial of Counsel of Choice

In his Fifth Ground for Relief, Fields claims he was denied counsel of his choice.  Although a least some of the facts supporting this claim are in the trial court record – the actual interaction with the trial court at the time of sentencing -- the claim was not raised on direct appeal.

Under Ohio law a constitutional claim which can be raised and decided on direct appeal but is not is barred from later consideration by the doctrine of *res judicata*.  *State v. Perry,* 10 Ohio St. 2d 175 (1967).  The *Perry* doctrine is an adequate and independent state procedural ground of decision.  *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

On the other hand, a constitutional claim which depends on facts outside the record on appeal must be presented by way of a petition for post-conviction relief under Ohio Revised Code § 2953.21.

Failure to present a matter on direct appeal will be excused if the failure is the result of ineffective assistance of appellate counsel.  However, the ineffective assistance of appellate counsel claim must itself be presented as required by state law.  *Edwards v. Carpenter*, 529 U.S. 446 (2000).  Under Ohio law, the sole method for presenting a claim of ineffective assistance of appellate counsel is by way of application for reopening under Ohio R. App. P. 256(B). See *State v. Murnahan*, 63 Ohio St. 3d 60 (1992).

Fields filed an Application to Reopen in which he pled the following as an omitted assignment of error:

> **New Assignment of Error 1**: The sentence is Void or Voidable where the Trial Court sentenced the Appellant Without counsel Without Having Obtained and Cause to Be Journalized a Written Waiver of Counsel Signed by the Appellant; and the Appellant was Prejudiced where Counsel Could have Prevented Conviction and Sentences for Unproven Charges, as well as Ensured the Return of the Appellant's Property.

(Application, State Court Record, ECF No. 9, Ex. 32, PageID 242).  In presenting this claim to the Fifth District, Fields makes no reference to the alleged conflict of interest between himself and his trial attorney, David Drew, over the affections of Misty Rowe which he raised on appeal from denial of the 26(B) Application (see below) nor does he advert to any other extra-record facts. Instead he appears to have thought his new counsel, Attorney Kaido, could, at the sentencing hearing, essentially re-litigate the case:

> Obviously, had the Appellant been represented by competent counsel at the sentencing hearing, such counsel could have argued that no evidence was presented to prove the Manufacturing and/or Trafficking charges; as well as having requested that the Trial Court

> include in the Judgment Entry an order returning the Appellant's $7,700.00, that the Jury determined. was not subject to forfeiture, and which both the Trial Court and Zanesville Police Department now have repeatedly refused to return, despite lacking legal authority to continue to deprive the Appellant of his funds; and the Appellant's sentence would likely have been considerably shorter, especially if the Trafficking and Manufacture Counts had been dismissed; but it is beyond argument that the Court of Appeals would have been required by law to declare the sentencing hearing, and resulting sentence, void, had Appellate Counsel Assigned and argued this error.

*Id.* at PageID 243.

In deciding the Application, the Fifth District first noted that the controlling precedent is *Strickland, supra.* (Entry, State Court Record, ECF No. 9, Ex. 34).  The appellate court then decided this claim on the merits:

> Appellant herein argues his Appellate counsel was ineffective for failing to argue that the trial court erred in allowing his replacement trial counsel to withdraw immediately prior to sentencing, and for failing to argue that his convictions were against the manifest weight and sufficiency of the evidence.
>
> Upon review, we find no merit in Appellant's argument that his counsel was ineffective. Appellant himself requested that his trial counsel withdraw, with full knowledge and a cautionary statement by the trial court that sentencing would still go forward.

*Id.* at PageID 252.

Upon appeal to the Supreme Court of Ohio, Fields made the following statement:

> The Appellant fired his Trial Counsel, David Drew, after he learned Mr. Drew was attempting to establish a romantic relationship with the Appellant's girlfriend, Misty Rowe. The Appellant then hired new Counsel, Mr. Kaido, to file and pursue a Crim.R. 33 Motion based upon evidence of Mr. Drew's romantic relationship with the Appellant's girlfriend/defense witness, Misty Rowe; Mr. Kaido was then permitted to withdraw without resistance, questions, or cautions normally provided by a Trial Court concerned with protecting a defendant's rights.

The Appellant hired Mr. Kaido to represent Crim. R. 33 matters, but when the trial Court interfered with his ability to provide conflict-free representation, he was forced to withdraw. Mr. Kaido was prepared to place on the record that trial counsel provided conflict infested representation by actively seeking an intimate relationship with the Appellant's girlfriend and key witness. The Appellant had (has) printed copies text messages sent between Mr. Drew to Misty Rowe to support his claim, which included that Mr. Drew, knowing of the Appellant's prior similar conviction, sabotaged his defense by putting the Appellant on the stand, opening the door to otherwise inadmissible evidence, and depriving the Appellant of his 5th Amend. Right against self-incrimination, after failing to object when APA Officer Eric Gaumer testified to criminal history (Trial Tp. 157), and when Mr. Gaumer testified that established he was a "stalking horse" for the police, in violation of the 4th Amend. protection against unreasonable search and seizure. See *State v. Cowans* (1999), 87 Ohio St.3d 68, 75-76; *Griffin v. Wisconsin,* 463 U.S. 868, 873-74. Indeed, Mr. Drew's intentional failure to object to Eric Gaumer's testimony, even when asked if he had any objection, along with having the Appellant testify, which opened the door to damaging criminal history, was an assassination of the defense by Mr. Drew designed to convict the Appellant, and free up Misty Rowe for his own romantic interests.

(Memorandum in Support of Jurisdiction, State Court Record, ECF No. 9, Ex. 9, PageID 258-59).

As noted above, facts outside the appellate record supporting a constitutional claim, such as these asserted facts about Attorney Drew's conflict of interest, must be presented to the Ohio courts in a petition for post-conviction relief. Fields filed such a petition in December 2019, but it was rejected at both the trial and appellate levels because no evidence outside the appellate record was presented to support it (Entries, State Court Record, ECF No. 9, Exs. 21, 26). Thus the alleged facts on which Fields relied on appeal to the Supreme Court of Ohio were never put before any Ohio court in evidentiary form.

What actually happened in the trial court regarding substitution of counsel? The case was set for sentencing on August 12, 2019. The transcript of the sentencing hearing shows that Fields appeared with Attorney Kaido (Sentencing Transcript, State Court Record, ECF No. 9-1, PageID

20

745). Fields expressly said he did not want Kaido to represent him at sentencing. *Id.*at PageID 745. Kaido had filed a motion to withdraw. The judge indicated the sentencing would proceed in order to make sure Fields wanted Kaido to withdraw and Fields answered that he understood that. *Id.* The judge then granted Kaido's motion to withdraw and he left the courtroom. *Id.* The prosecutor argued for the maximum sentence in large part because Fields had been convicted on these charges two years after his release from prison on a prior drug conviction. *Id.* at PageID 749-50.

Given his right to allocution, Fields spoke of how he had become an ordained minister while in prison before. *Id.* at PageID 750-51. Next he proclaimed his innocence. *Id.* at PageID 751. He claimed his trial attorney, Drew, had not shared discovery with him. *Id.* at PageID 752. Then he claimed Drew had ulterior motives, romantic designs on Fields' fiancée. He claimed to have text messages proving this. *Id.* The judge then interrupted to ask if he had discussed this with Attorney Kaido about how to present this evidence. *Id.* at PageID 753. Fields answered that he was going to appeal. He also made additional arguments about the fairness of the trial – jury composition, the response to the jury's question, the prosecutor's having advised his fiancée's employer of her drug problems.

The judge recited Fields' lengthy felony record going back to 1981 and then imposed sentence. Fields, who had been represented by retained counsel to this point, then asked for appointed counsel for appeal which was granted. *Id.* at PageID 761. Fields never asked for a continuance to hire a new attorney, nor did he asked to have an attorney appointed for sentencing.

The jury's verdicts were entered of record on June 6, 2019 (Entry, State Court Record, ECF No. 9, Ex. 3). On June 17, 2019, Attorney Drew moved to withdraw at the direction of Fields (Motion, State Court Record, ECF No. 9, Ex. 4). On July 26, 2019, Attorney Kaido moved to

substitute as counsel and advised the court he knew that sentencing was set for August 12, 2019.

*Id.* at Ex. 6. A mere two weeks later, Attorney Kaido moved to withdraw, representing

> Now comes undersigned counsel, Mark E. Kaido, and submits this motion to withdraw as to any further representation of the Defendant. Counsel was retained by the Defendant on July 11th, 2019. However, due to the Defendant's misinterpretation of what was expected of Counsel, the Defendant has directed Counsel to step aside and not be involved in his upcoming sentencing and wants to release Counsel of any further duties. Therefore, Counsel wishes to withdraw.

*Id.* at Ex. 7. The motion is signed by Fields and does not request a continuance of sentencing, appointment of counsel, or any other relief.

When he later appealed to the Supreme Court of Ohio, Fields represented that Attorney Kaido was hired to present the conflict-of-interest claim by way of a Criminal Rule 33 motion for new trial. Why, then, did Fields discharge Kaido four days before sentencing, insist on the discharge at the time of sentencing, then proceed to sentencing without any mention of a need or desire to present the conflict evidence? Fields has not told this Court. He insists, instead, that the trial court should have proceeded with the formalities of making a *Faretta* warning, asking if he wanted a continuance to hire new counsel or to have an attorney appointed, and so forth.

Any waiver of the right to counsel at trial must be knowing, intelligent, and voluntary. *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938). Warnings of the pitfalls of proceeding to trial without counsel must be rigorously conveyed. *Patterson v. Illinois,* 487 U.S. 285, 298 (1988); *Faretta v. California,* 422 U.S. 806, 835 (1975). Less rigorous warnings are required pretrial because at that stage the dangers of self-representation are less substantial and more obvious to an accused than they are at trial. *Iowa v. Tovar*, 541 U.S. 77 (2004). At the time of sentencing, the dangers of self-representation are even less because there are fewer if any legal technicalities to surmount. In particular, the right of allocution is often exercised in a free-wheeling manner as it was here. The

burden of proving that a waiver was not competently and intelligently made is on the person making a collateral attack on the uncounseled sentence. *Id*. Insistence on the right to represent oneself necessarily waives the right to counsel. *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006). *Indiana v. Edwards*, 554 U.S. 164 (2008).

The right to self-representation is not absolute. *Martinez v. Ct. of Appeal of Cal., Fourth App. Dist*., 528 U.S. 152, 161 (2000). The right can be forfeited by attempting to exercise it on the morning of trial because the request was untimely and granting it would have disrupted, unduly inconvenienced, and burdened the administration of the court's business. *Hill v. Curtin,* 792 F.3d 670 (6th Cir. 2015)(en banc).

Taken together, this precedent strongly suggests that a habeas court should not vacate a conviction where the defendant unequivocally fired the lawyer he later said was prepared to present a new trial motion, where the firing happened four days before sentencing but the attorney appeared and could have proceeded with sentencing but the defendant insisted he withdraw, and where the defendant never asked for substitute counsel, retained or appointed. Of course, Fields was entitled to and received appointed counsel for appeal. He was not entitled to appointed counsel to file a new trial motion. He never filed any evidence of the conflict of interest, either in a *pro se* new trial motion or in his petition for post-conviction relief. Although it would have been better practice for the trial judge to have provided *Faretta* warnings and asked if Fields wanted substitute counsel for sentencing, failure to do so did not deprive Fields of any right clearly established by Supreme Court precedent. *Nichols v. United States*, 511 U.S. 738 (1994), does not hold to the contrary. Rather, it holds that an uncounseled misdemeanor conviction may form part of the basis for a subsequent sentence so long as no confinement sentence was imposed on the prior conviction.

Even if the failure to give *Faretta* warnings was a constitutional violation, it was harmless.

Constitutional error is harmless if the habeas court is satisfied it did not have a substantial and injurious effect or influence in determining the verdict. *Brecht v. Abrahamson*, 507 U.S. 619 (1993), adopting standard from *Kotteakos v. United States*, 328 U.S. 750 (1946). A federal court may grant habeas relief only if a constitutional violation had a substantial and  injurious effect or influence in determining the jury's verdict. *Williams v. Bauman*, 759 F.3d 630, 637 (6th Cir.2014). This standard calls for reversal when the reviewing court lacks a "fair assurance" that the outcome of a trial was not affected by evidentiary error.  *Beck v. Haik*, 377 F.3d 624 (6th Cir. 2004).

In this case, the failure to give *Faretta* warnings or to otherwise deal with Kaido's withdrawal almost certainly had no impact on the sentence.  Fields does not suggest any action new counsel could have taken which would have changed the sentence.  Apparently he believed that all of the defenses he raised unsuccessfully at trial could be raised again at sentencing, but that is not the law.  Nor by proceeding with sentencing did he give up his right to file the new trial motion he had projected Kaido would file.

This Court does not know why Kaido did not file the motion or why he and Fields misunderstood one another about that motion.  Fields told Judge Cottrill he had told Kaido about the conflict of interest.   As the Judge's comments imply, the behavior of which Fields accused Drew would have had serious ethical consequences for Drew if proved.  It may be that Kaido was reluctant to make those accusations on Fields' behalf after reviewing Fields' evidence because making serious ethical charges against another attorney on less than convincing proof would have been more damaging to Kaido's reputation than to Drew's.  In any event, his withdrawal, which Fields ordered, did not prevent Fields from presenting whatever conflict of interest evidence he had with his petition for post-conviction relief, but he did not do so.  Nor did it prevent him from filing a motion for new trial supported by that evidence which he has never

done.

Fields also argues

> The denial of counsel was also tactical, because it inhibited Petitioner's ability to present grounds for a new trial, under O.Crim.R. 33, which Atty. Kaido initiated before being enjoined by the state trial court and forced to resign amid a conflict-of-interest. Petitioner, inter alia, presented evidence that established his trial counsel labored under a conflict-of-interest.

(Traverse, ECF No. 15, PageID 839). This argument is constructed out of whole cloth. There is no evidence that Attorney Kaido had begun to prepare a new trial motion which would not have been presented in any event at sentencing. Fields never presented any **evidence**[1] of Attorney Drew's conflict of interest, as compared with allegations. And he never made any allegation that Kaido had a conflict of interest. And there is no evidence that the trial court interfered with Kaido's efforts to present a new trial motion. In fact the trial judge asked Fields if he had discussed the Drew conflict evidence with Kaido and Fields responded instead that he intended to appeal.

Given Fields' unequivocal discharge of Kaido and failure to request new counsel for sentencing, he has shown no prejudice from the trial court's allowing the sentencing to proceed. The Fifth Ground for Relief should therefore be dismissed.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that

---

[1] Fields' claim that he has evidence of the romantic interest of Drew in his fiancée has never been presented to any court.

the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not

be permitted to proceed *in forma pauperis*.


October 18, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.